Filed 5/2/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW THOMAS SLOUGH,<br><br>    Defendant and Appellant. | 2d Crim. No. B262102<br>(Super. Ct. No. 2014006310)<br>(Ventura County) |

Anyone who *personally* inflicts great bodily injury (GBI) on anyone other than an accomplice in the commission of a felony shall, in addition to the term of imprisonment imposed for the underlying offense, receive an additional three-year prison term. (Pen. Code,[1] § 12022.7, subd. (a).)  Here we follow settled precedent in recognizing that "personally" in this context means the GBI is directly caused by the offender in his or her commission of a felony.

Appellant Matthew Thomas Slough sold heroin to Michael Zermeno.  Zermeno thereafter returned to his home, injected

---

[1] All statutory references are to the Penal Code unless otherwise stated.  Section 12022.7, subdivision (a) is hereinafter referred to as section 12022.7(a).

some of the heroin and suffered a fatal overdose. A jury convicted appellant of selling or furnishing heroin (Health & Saf. Code, § 11352, subd. (a)), and found true an allegation that he personally inflicted GBI in committing the offense (§ 12022.7(a)). We conclude the evidence is insufficient to support the GBI finding: Slough sold the heroin, but it was Zermeno who "personally" inflicted GBI upon himself. We order the judgment reversed and the matter remanded for resentencing. Otherwise, we affirm.

FACTS AND PROCEDURAL HISTORY

In February 2014, a heroin delivery service known as "the Girls" operated in the city of Ventura. Appellant had access to the service and often acted as a "middleman" on behalf of friends and acquaintances who wanted to purchase heroin.

On February 9, 2014, Zermeno was living in Ventura with his girlfriend Dayna Cushing, his brother Brandan, and Brandan's fiancé. Zermeno was addicted to heroin and had previously purchased drugs from "the Girls" through appellant. He texted appellant that morning and asked if appellant could contact "the Girls" for him. Appellant responded that he had contacted "the Girls" on Zermeno's behalf and that a delivery driver could meet up with them at about noon. Zermeno also sent a text to appellant's brother stating that he wanted to purchase $100 worth of heroin.[2] At 12:55 p.m., appellant texted Zermeno that the driver was on his way and added, "Just text me when you're walking out and I'll meet you at [the] 76 [gas station]."

Zermeno left his house and told Cushing he was going to repay someone $100. He drove to the 76 gas station and met up

_____

[2] A narcotics detective testified that $100 would purchase one to one-and-a-half grams of heroin.

2

with appellant, who arrived in a separate car. A surveillance video depicted appellant and Zermeno entering the station's minimart and walking to a hallway that was out of view of the surveillance cameras. Less than 30 seconds later, appellant and Zermeno walked to the cash register and got in line. After making purchases, the men separately left the station.

Zermeno immediately returned home and told Cushing he was going to the bathroom. Over an hour later, Cushing texted Zermeno but received no reply. She knocked on the bathroom door and again there was no response. Brandan forced the door open and found Zermeno lying on the floor next to a belt and needle. Heroin was on a nearby table. Brandan performed CPR on Zermeno and Cushing called 911. The paramedics arrived and transported Zermeno to the hospital. Brandan threw away the remaining heroin because he did not want Zermeno, who was employed as a firefighter and paramedic, to get into trouble.

Zermeno was not breathing when he arrived at the hospital and a breathing tube was placed in his trachea. He was taken off life support two days later and died. The cause of death was brain damage resulting from acute heroin intoxication. Although the toxicology report indicated Zermeno had also ingested oxycontin prior to the overdose, the medical examiner concluded "it was the injection of the heroin that actually caused him to succumb to the drug death." The police subsequently searched appellant's bedroom and found glass smoking pipes, hypodermic needles, and a spoon with heroin residue.

Appellant was charged with selling or furnishing a controlled substance, i.e., heroin (count 1) with an attendant GBI allegation; involuntary manslaughter (count 2) (§ 192, subd. (b)); and misdemeanor possession of an injection/ingestion device

3

(count 3) (Health & Saf. Code, former § 11364.1, subd. (a); now Health & Saf. Code, § 11364, subd. (a)). His motion to dismiss the GBI allegation pursuant to section 995 was denied.

Appellant was convicted on counts 1 and 3 and the GBI allegation was found to be true. The jury found him not guilty of involuntary manslaughter.

Appellant's request to set aside the true finding on the GBI allegation was denied. The court sentenced him to six years in state prison, consisting of the low term of three years on count 1 plus a three-year enhancement under section 12022.7(a).

## DISCUSSION

Appellant contends the evidence is insufficient to support the finding that he personally inflicted GBI on Zermeno, as provided in section 12022.7(a). We agree.

"'We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. [Citation.]" (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) Namely, ""we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]"' [Citation.]" (*Ibid.*) To the extent appellant's claim implicates an interpretation of section 12022.7(a), our review is de novo. (*People v. Elder* (2014) 227 Cal.App.4th 411, 417.)

Section 12022.7(a) provides that "[a]ny person who *personally inflicts* [GBI] on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (Italics added.) "'[T]he

4

meaning of the statutory requirement that the defendant *personally inflict* the injury does not differ from its nonlegal meaning. Commonly understood, the phrase "personally inflicts" means that someone "in person" [citation], that is, directly and not through an intermediary, "cause[s] something (damaging or painful) to be endured" [citation].' [Citation.]" (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1184 (*Martinez*).) In enacting section 12022.7, "the Legislature intended to impose an additional penalty for causing [GBI] only on those principals who perform the act that directly inflicts the injury . . . ." (*People v. Cole* (1982) 31 Cal.3d 568, 571.) "[T]he defendant must directly cause an injury, not just proximately cause it. [Citation.]" (*People v. Guzman* (2000) 77 Cal.App.4th 761, 764 (*Guzman*).) Accordingly, "one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7." (*Cole*, at p. 571.)

If the Legislature had intended for section 12022.7(a) to apply to defendants who proximately cause GBI or death rather than personally inflict it, it would have said so. The Legislature made such an express statement in enacting subdivision (d) of section 12022.53, which imposes a sentence enhancement of 25 years to life on any defendant who, in the commission of a specified felony, "personally and intentionally discharges a firearm and proximately causes [GBI] . . . or death, to any person other than an accomplice . . . ." In analyzing that statute, our Supreme Court recognized: "Section 12022.53(d) requires that the defendant 'intentionally and *personally* discharged a firearm' (italics added), but only that he 'proximately caused' the [GBI] or death. . . . Proximately causing and personally inflicting harm are two different things. The Legislature is aware of the

5

difference. When it wants to require personal infliction, it says so. (E.g., Pen. Code, § 12022.7, subd. (a) [imposing a sentence enhancement on a person who "personally inflicts great bodily injury"].) When it wants to require something else, such as proximate causation, it says so, as in section 12022.53(d)." (*People v. Bland* (2002) 28 Cal.4th 313, 336 (*Bland*).)

Although section 12022.7(a) is broadly construed (*People v. Sainz* (1999) 74 Cal.App.4th 565, 574), our Supreme Court has made clear that proximate cause does not equate with personal infliction and that "[t]he Legislature is aware of the difference." (*Bland*, *supra*, 28 Cal.4th at p. 336.) Indeed, the court cited section 12022.7(a) in making that point. Moreover, the evidence in this case is insufficient to support a finding that appellant personally inflicted GBI. He sold heroin to Zermeno, but his performance of that act did not directly cause Zermeno's injuries. The act that did so—Zermeno's ingestion of the drugs—occurred at a different time and location where appellant was not present. That Zermeno would not have suffered GBI but for appellant selling him the drugs merely demonstrates that appellant was a proximate cause of the injury, which is not enough to sustain a finding of personal infliction. (*Guzman*, *supra*, 77 Cal.App.4th at p. 764; *Bland*, at pp. 335-337 [approving CALJIC No. 17.19.5, which defines proximate causation of GBI or death for purposes of section 12022.53(d) as "an act or omission that sets in motion a chain of events that produces as a direct, natural, and probable consequence of the act or omission, the [GBI] or death and without which the [GBI] or death would not have occurred"].)

*Martinez*, *supra*, 226 Cal.App.4th 1169, upon which the People rely, is inapposite. The defendant in that case was convicted in a bench trial on three counts of furnishing a

6

controlled substance (Health & Saf. Code, § 11352, subd. (a)) and one count of involuntary manslaughter (§ 192, subd. (b)). The court also found GBI allegations true as to two of the drug counts. The evidence indicated that the victim died from an overdose after the defendant gave her six or seven 10-milligram methadone pills and six to eight 10-milligram hydrocodone pills over the course of a night of drinking. In concluding the evidence was sufficient to support the GBI enhancements, the Court of Appeal rejected the defendant's claim that the victim's death was directly caused by her volitional use of the drugs, rather than by the defendant's act of furnishing the drugs to her. The court reasoned: "More than one person may be found to have directly participated in inflicting a single injury." (*Martinez*, at p. 1185.) "Appellant may not have forced [the victim] to take a lethal quantity of drugs, but he supplied her with them knowing that the drugs were more dangerous when combined with alcohol. Appellant continued to supply drugs to [the victim] as he watched her continue to consume alcohol and become [more] intoxicated . . . . Appellant's act of personally providing [the victim] a lethal quantity of drugs while she was in an intoxicated state was the direct cause of [the victim's] death." (*Id.* at p. 1186.)

Here, there is no such direct factual connection between the furnishing of the drugs and the user's ingestion. Appellant handed off drugs to Zermeno in exchange for money. After that, they each went their separate ways. In *Martinez*, the defendant repeatedly supplied drugs to the victim while observing her increasing intoxication; the furnishing was akin to administering. Appellant, by contrast, played no part in Zermeno's ingestion of the drugs. He neither performed nor participated in the act that directly inflicted the injury, so the GBI enhancement cannot

7

apply. (*People v. Cole*, *supra*, 31 Cal.3d at p. 571.)[3] Because the trial court's decision to impose the low term was premised upon the imposition of the enhancement that is now being stricken, we remand for resentencing.[4]

---

[3] The result in *Martinez* is also consistent with the requirement that the personal infliction of GBI occur "in the commission of a felony . . . ." (§ 12022.7(a).) In *Martinez*, the events were ongoing when the injury was inflicted; in the instant matter the crime of selling or furnishing the drug had concluded and was complete. To accept the dissent's analysis, the statute would have to read "in the commission or as a consequence of the commission" of a felony. Moreover, any concern that a seller or furnisher of illegal drugs cannot otherwise be punished for GBI or death proximately resulting from the use of the drugs is allayed where, as here, a homicide is charged—i.e., involuntary manslaughter (§ 192, subd. (b)). That the defendant in *Martinez* was convicted of involuntary manslaughter, while appellant was acquitted of that offense, only further demonstrates that the cases are inapposite.

[4] We reject the dissent's assertion that our result effectively adds the sale of heroin to the list of crimes, as set forth in subdivision (g) of section 12022.7, to which the GBI enhancement cannot apply. Our conclusion is based on the facts underlying appellant's conviction of the substantive offense, not on the mere fact of that conviction.

The dissent's complaint that we are "narrowly" construing section 12022.7(a) is also unfounded. We simply follow controlling precedent in recognizing that a GBI enhancement cannot be imposed upon a showing of proximate causation, which is all that was established here. The dissent, however, would rewrite the statute rather than broadly construe it. It erroneously contends the requirements of section 12022.7(a) were

8

## DISPOSITION

The true finding on the section 12022.7(a) allegation as to count 1 is reversed, and the corresponding three-year enhancement is stricken.  The matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

I concur:

TANGEMAN, J.

---

met because the act of selling or furnishing heroin to Zermeno "was an actual cause, a legal cause, and a proximate cause of the death.  [Citations.]"  (Dissent, at p. 2.)  Actual cause, or cause in fact, is established when the defendant's conduct was a substantial factor in bringing about the injury.  (CALCRIM No. 620; *Lombardo v. Huysentruyt* (2001) 91 Cal.App.4th 656, 665.)  Legal cause is the same as proximate cause.  (*Lombardo*, at p. 665.)  None of these forms of causation are sufficient to sustain the imposition of a GBI enhancement under section 12022.7(a). (*Bland, supra*, 28 Cal.4th at p. 336; *Guzman, supra*, 77 Cal.App.4th at p. 64.)

YEGAN, Acting P. J., Dissenting:

I respectfully dissent. A heroin peddler sells death. The seller does not necessarily want his customer to die immediately. He or she would prefer that the customer will experience euphoria and return to buy more heroin. But the peddler never quite knows what he is selling. Few, if any, heroin peddlers test their wares in laboratory conditions. A heroin peddler does not sell pharmaceutical grade opiate derivatives. Death, whether instantaneous or after repeated use, is to be expected. The possibility of overdose is always present. Here the victim overdosed on a single and lethal dose of about a gram of a substance containing heroin.

In my view, the majority opinion reaches out to create new law which, in my view, is at variance with legislative direction. It also makes for bad public policy. The exclusion list of Penal Code section 12022.7, subdivision (g), says that the enhancement does not apply to "murder, manslaughter, arson, and unlawfully causing a fire . . . ." (*People v. Cross* (2008) 45 Cal.4th 58, 66, fn. 3 (*Cross*).) The net effect of the majority opinion is the addition to the exclusion list. This violates the familiar rule of "expressio unius est exclusio alterius" i.e., the expression of enumerated items is to the exclusion of others. An appellate court is not "empowered to insert what a legislative body has omitted from its enactments. [Citation.]" (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d l082, l099.) The legislature will be surprised to learn that the explicit list of excluded offenses now has one more—sale of heroin. The California Supreme Court will be equally surprised to see that their express indication that this enhancement be "broadly" construed (*Cross*, at p. 66, fn. 3) has been ignored. Not only has it

been narrowly construed, it has been "construed" as a matter of law to have no application whatsoever to sale of heroin.

The majority opinion purports to engage in a substantial evidence inquiry and concludes that no rational jury could make the factual finding that appellant did directly inflict great bodily injury upon Zermeno. This is an impermissible reweighing of the evidence. Indeed, we can add the jury to the list of those who will be surprised by the majority opinion. Here, it is apparent that about an hour after appellant personally sold a substance containing a lethal dose of heroin to Zermeno, he went home and used it. My common sense tells me that this is "direct."

The majority opinion points out that the seller and buyer went their separate ways after the transaction and so appellant did not personally and directly inflict the great bodily injury. It is true the death occurred out of appellant's presence. This does not, in my view, relieve him from liability for infliction of great bodily injury. This overdose was "sealed" at the time of the sale. In other words, appellant sold the victim what was tantamount to a "time bomb." This death by overdose is a direct result of appellant's personal sale of heroin to the victim. This furnishing was an actual cause, a legal cause, and a proximate cause of the death. (See *Burrage v. United States* (2014) __ U.S. __, __ [134 S.Ct. 881, 891-892, 187 L.Ed.2d 715] [discussing contributing cause]; see also *People v. Jennings* (2010) 50 Cal.4th 616, 643-644 [substantial factor].) I auger for judicial restraint. I would affirm the judgment with the finding of great bodily injury.

CERTIFIED FOR PUBLICATION.

YEGAN, Acting P. J.

2

Kevin G. DeNoce, Judge
Superior Court County of Ventura

_____

Christina Alvarez Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Kamala D. Harris, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.