Filed 12/5/19

# CERTIFIED FOR PARTIAL PUBLICATION\*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B290948 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA115677) |
| v. | |
| TREYVON LOVE OLLO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Los Angeles Superior Court, Steven D. Blades, Judge. Affirmed.

Rachel Lederman, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Colleen M. Tiedemann, Deputy Attorney General, for Plaintiff and Respondent.

---

\*    Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

\* \* \* \* \* \*

A criminal defendant furnishes controlled substances to another, who dies from ingesting those drugs. Is that defendant immune from criminal liability for personally inflicting great bodily injury upon the drug user by virtue of the user's voluntary ingestion of the drugs? The courts do not agree on how to answer this question: *People v. Martinez* (2014) 226 Cal.App.4th 1169 (*Martinez*) says "no," while *People v. Slough* (2017) 11 Cal.App.5th 419 (*Slough*) says "yes." We conclude that *Martinez* has the better argument. Because we also reject the sentencing challenges raised by the defendant in this case (in the unpublished portion of our decision), we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

In late June 2017, Treyvon Love Ollo (defendant), then 18 years old, invited his 16-year-old girlfriend Reina over to his house. He told her that he "ha[d] some coke that [he] got last night." Reina came over, and the couple retreated to defendant's bedroom and had sex.

Defendant then provided Reina with a white, powdery substance that he thought was cocaine, but which had a "[weird] smell." Reina cut the powder into lines using defendant's driver's license, and snorted it up her nose. She passed out within 30 minutes.

As it turns out, the white powdery substance was not cocaine. It was fentanyl. Like cocaine, fentanyl is a controlled substance, but one that is 50 to 100 times more potent than heroin.

Reina died from a fentanyl overdose later that night.

2

When defendant awoke the next morning, he found her dead.  At first, he tried to get a friend to help him put her corpse in an Uber to transport it to a hospital.  However, when no one would agree to help, he called 911.

## II.     Procedural Background

The People charged defendant with the crime of furnishing, giving, or offering to furnish or give a controlled substance to a minor (Health & Saf. Code, § 11353).  The People further alleged that defendant personally inflicted great bodily injury upon Reina (Pen. Code, § 12022.7, subd. (a)).[1]

The jury was instructed on two possible theories of criminal liability—namely, that defendant (1) furnished or gave drugs to Reina, and (2) offered to furnish or give drugs to Reina.

The jury found defendant guilty of furnishing or giving drugs to Reina, and found true the allegation that he had personally inflicted great bodily injury upon her.

The trial court sentenced defendant to 12 years in prison.  On the furnishing count, the court imposed an upper-term sentence of nine years.  To that, the court added another three years for the personal infliction enhancement.  The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $40 court operations assessment (§ 1465.8, subd. (a)(1)).

Defendant filed this timely appeal.

DISCUSSION

## I.     Personal Infliction of Great Bodily Injury

During the conference regarding jury instructions, defendant indicated his intention to argue, in closing, that

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

3

Reina's voluntary ingestion of the drugs was an "intervening cause" that precluded his liability for personally inflicting great bodily injury upon her. The court ultimately ruled that this argument was "contrary to the law" and prohibited defendant from making it.

Although closing argument is a critical part of a criminal trial because it provides the parties with "the opportunity finally to marshal the evidence . . . before submission of the case to judgment" (*Herring v. New York* (1975) 422 U.S. 853, 862), trial courts enjoy "'great latitude'" in regulating the permissible scope of closing argument (*People v. Edwards* (2013) 57 Cal.4th 658, 743), and on that basis may preclude any argument that is contrary to the law (*People v. Baldwin* (1954) 42 Cal.2d 858, 871).

This case accordingly presents the question: Does a drug user's voluntary ingestion of drugs provided by a defendant, when those drugs result in an overdose or other injury, preclude a finding that the defendant personally inflicted great bodily injury under section 12022.7?

Because the answer to this question turns largely on the construction of section 12022.7, our review is de novo. (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 234.)

A. ***Personal infliction and causation, generally***

Section 12022.7, subdivision (a) empowers a trial court to impose "an additional and consecutive" three-year prison term if a defendant "personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony." (§ 12022.7, subd. (a).)

A defendant "personally inflicts" great bodily injury if he directly causes the injury—that is, if the defendant "himself" "actually" "inflicts the injury" by "directly perform[ing] the act

that causes the physical injury." (*People v. Cole* (1982) 31 Cal.3d 568, 572-573, 579 (*Cole*); *People v. Modiri* (2006) 39 Cal.4th 481, 495 (*Modiri*) [requiring a "direct physical link between [defendant's] own act and the victim's injury"].) Under this definition, it is not enough to show that the defendant "proximately cause[d]" the great bodily injury—that is, it is not enough to show that the defendant's conduct was a "substantial factor contributing" to the injury because that conduct "set[] in motion the chain of events" that "natural[ly]" ripened into the injury. (*People v. Sanchez* (2001) 26 Cal.4th 834, 845; *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 346-347 (*Rodriguez*); see also, *People v. Bland* (2002) 28 Cal.4th 313, 336 (*Bland*) ["Proximately causing and personally inflicting harm are two different things."].) It is also not enough to show that the defendant aided and abetted the person who directly caused the injury. (*Cole*, at p. 571.) Requiring this direct causal link furthers the enhancement's underlying purpose of imposing a greater penalty upon (and thereby deterring) persons who inflict such grievous injuries. (*People v. Guzman* (2000) 77 Cal.App.4th 761, 764 (*Guzman*) [direct causation requirement serves "the goal of deterring the infliction of great bodily injury"]; see also *Cole*, at p. 571; *People v. Ahmed* (2011) 53 Cal.4th 156, 162 [section 12022.7 aims to "punish more severely" those who engage in such conduct].)

At times, there can be more than one direct cause of a victim's great bodily injury. (*Modiri*, *supra*, 39 Cal.4th at p. 493 ["The term 'personally' . . . 'inflicts' . . . does not mean exclusive[ly] . . ."].) When the acts of more than one person combine to inflict great bodily injury, each of those persons has directly caused that injury and each has personally inflicted that

5

injury. (E.g., *Modiri*, at p. 486 [multiple assailants engage in a "group attack"; each has personally inflicted great bodily injury]; *People v. Corona* (1989) 213 Cal.App.3d 589, 594 [same]; *Guzman*, *supra*, 77 Cal.App.4th at p. 764 [defendant, while intoxicated, turned vehicle into oncoming traffic and was struck by a third party; defendant personally inflicted great bodily injury]; cf. *People v. Valenzuela* (2010) 191 Cal.App.4th 316, 323 [causal mechanism for injury sustained as a result of collision of cars unknown; no personal infliction].) This is true, even when one of the persons contributing to the injury is the victim herself. (E.g., *People v. Elder* (2014) 227 Cal.App.4th 411, 420-421 [victim injured while "struggling and attempting to pull away [from]" defendant; defendant personally inflicted injury]; *People v. Dominick* (1986) 182 Cal.App.3d 1174, 1185, 1210-1211 [same]; cf. *Rodriguez*, *supra*, 69 Cal.App.4th at pp. 346, 351 [victim injured after hitting his head while trying to tackle the defendant; defendant did not personally inflict injury]; *People v. Jackson* (2000) 77 Cal.App.4th 574, 575-576, 580 [victim injured tripping over curb while walking away from the defendant; defendant did not personally inflict injury].) What is more, a defendant whose act is one of many concurrent direct causes of an injury is liable for personal infliction under section 12022.7 even if that injury is inflicted accidentally (*Guzman*, at p. 764) and even if the injury occurs days, weeks or even months after the defendant's act (*People v. Cross* (2008) 45 Cal.4th 58, 66, 68-69 (*Cross*) [defendant's act of engaging in sexual intercourse may be a direct cause of subsequent conception and pregnancy]).

**B.** *Personal infliction and causation, as applied*

Applying the above stated law, we conclude that a defendant's act of furnishing drugs and the user's voluntary act of

ingesting them constitute concurrent direct causes, such that the defendant who so furnishes personally inflicts great bodily injury upon his victim when she subsequently dies from an overdose.

We reach this conclusion for three reasons. First, this conclusion is consistent with the precedent cited above, which holds that a defendant directly causes—and hence, personally inflicts—great bodily injury when his conduct, together with the victim's, accidentally produces that injury. *Martinez* came to the same conclusion with similar reasoning. (*Martinez*, *supra*, 226 Cal.App.4th at pp. 1184-1186.) Second, this conclusion is consistent with the purpose of section 12022.7 to punish (and hence deter) those defendants who themselves directly cause the injury; indeed, "[a] contrary [conclusion] would mean that those who" personally furnish drugs that cause a fatal overdose "would often evade enhanced punishment." (*Modiri*, *supra*, 39 Cal.4th at p. 486.) Lastly, this conclusion is consistent with the plain language of section 12022.7, subdivision (g), which spells out the specific crimes to which the personal infliction enhancement is inapplicable—namely, murder, manslaughter, or arson as defined in sections 451 or 452. Were we to conclude that a victim's voluntary ingestion of a drug furnished by another breaks the causal chain as a matter of law, we would effectively be adding the crime of furnishing controlled substances to subdivision (g)'s list. This we cannot do. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 ["no court has the "'power to rewrite [a] statute . . .'"'].)

In reaching this conclusion, we part ways with *Slough*. *Slough* purported to distinguish (and hence preserve) *Martinez* on the ground that the defendant in *Slough* merely "handed off [the] drugs" to the victim, "went [his] separate way[]," and thus "played no part in [the victim's] ingestion of the drugs," while the

7

defendant in *Martinez* both supplied the drugs and stuck around while the victim ingested them. (*Slough, supra,* 11 Cal.App.5th at p. 425.) Although it is possible to draw this factual distinction between *Slough* and *Martinez,* that distinction is not in our view analytically significant. As noted above, a concurrent direct cause of an injury remains such even if the act and injury are separated by time and space. (*Cross, supra,* 45 Cal.4th at pp. 66, 68-69.) By placing dispositive weight on the temporal and spatial distance between the defendant's conduct of furnishing and the victim's act of ingesting, *Slough* contravenes this principle of direct concurrent causation. *Slough* also effectively treats the victim's ingestion as an intervening or superseding cause (albeit an entirely foreseeable one). Because superseding cause is a concept relevant to proximate causation (e.g., *People v. Brady* (2005) 129 Cal.App.4th 1314, 1324-1325, 1328; *People v. Schmies* (1996) 44 Cal.App.4th 38, 49), it is irrelevant to the very different question of direct causation (*People v. Autry* (1995) 37 Cal.App.4th 351, 363 [it is improper to "label[] a concurrent cause as a superseding cause"]; see also, *Bland, supra,* 28 Cal.4th at p. 336). For much the same reason, we decline defendant's invitation to find other factual distinctions between this case and *Martinez.*

We recognize that our disagreement with *Slough* means that, under our holding, drug dealers are liable for additional prison time whenever the persons to whom they furnish drugs are subjected to great bodily injury due to their drug use. Policy makers may come to a different conclusion about whether this is a desirable result. However, our Legislature has—for now, at least—already weighed in by choosing not to declare this enhancement inapplicable to crimes related to the distribution of

8

controlled substances. (§ 12022.7, subd. (g).) We must defer to that legislative judgment.

Because the victim's voluntary ingestion of the drugs furnished by defendant did not absolve him of his direct causal role in her injury, the argument that it did is contrary to the law and was properly barred by the trial court.

## II. Sentencing Errors

Defendant argues that the trial court erred in (1) imposing the upper-term sentence of nine years on the furnishing count based on impermissible factors, and (2) imposing the restitution fine and assessments without first holding an ability-to-pay hearing, in violation of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

### A. *Imposition of upper-term sentence*

The trial court imposed the upper-term sentence of nine years on the furnishing count, and justified this selection by citing six aggravating factors: (1) "[t]he crime involved great violence" insofar as the victim died, (2) the crime involved an underage victim, (3) defendant engaged in "despicable" behavior in enlisting a friend to put the victim's corpse in an Uber, (4) defendant "took advantage of the position of trust and confidence that the victim had in him," (5) defendant was on probation at the time of the crime, and (6) defendant's "prior performance on probation was not satisfactory."

Defendant argues that the court erred in relying upon the first three aggravating factors because the first factor is duplicative of the great bodily injury enhancement, the second is duplicative of an element of the underlying crime (namely, that the controlled substance was furnished to a minor), and the third

9

is not a permissible aggravating factor under California Rules of Court, rule 4.421.

We reject defendant's argument for two reasons.

First, defendant cannot now object to the imposition of the upper term because he did not object to this "discretionary" "sentencing choice[]" before the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 356.)

Second, any error was not prejudicial. Defendant is correct that the trial court abused its discretion (1) in treating a fact underlying a sentencing enhancement and a fact constituting an element of the offense as aggravating factors (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(c), (d); *People v. Forster* (1994) 29 Cal.App.4th 1746, 1758), and (2) in treating a fact not enumerated in Rule 4.421 or any other statute as an aggravating factor (Cal. Rules of Court, rule 4.421(c)). (See generally, *People v. Sandoval* (2007) 41 Cal.4th 825, 847 [abuse of discretion review].) However, these errors with respect to the first three factors were not prejudicial because "a single factor in aggravation suffices to support an upper term" (*People v. Osband* (1996) 13 Cal.4th 622, 730; *People v. Coleman* (1989) 48 Cal.3d 112, 163) and the trial court relied on three other aggravating factors when imposing the upper term. Those other factors are supported by substantial evidence, as defendant's long-time friendship with Reina and their intimacy meant he occupied a "position of trust and confidence" with the victim that caused her not to question the safety of the drugs he furnished, he was on probation, and his admission to acquiring and offering drugs meant he was violating the law, such that his performance on probation was "not satisfactory." These other factors are also legally valid. (Cal. Rules of Court, rule 4.421(a)(11) [occupying a

10

position of trust], 4.421(b)(4) [being on probation], 4.421(b)(5) [unsatisfactory performance on probation].)

Defendant offers two further arguments. Citing *People v. Young* (1983) 146 Cal.App.3d 729, 734 and *People v. Moreno* (1982) 128 Cal.App.3d 103, defendant asserts that a trial court may only impose the upper term if his offense is "'distinctively worse'" than the ordinary commission of the offense. He is wrong. *Young* and *Moreno* do not support his position because they deal with whether a fact that is an element of an offense may sometimes be used as an aggravating factor; they do not speak to reliance on aggravating factors that are not subject to a "dual use." None of the last three factors the trial court cites are used elsewhere. Defendant next contends that his trial counsel was constitutionally ineffective. However, it is well settled that counsel is not ineffective for failing to make an argument that lacks merit. (*People v. Lucero* (2000) 23 Cal.4th 692, 732.) Because the trial court's imposition of an upper term sentence rested on three valid aggravating factors, and the trial court in no way indicated that its imposition of the upper term depended on any of the invalidated factors or on the totality of all six factors, any objection to the trial court's reliance on the invalid factors would have been meritless.

**B.** *Imposition of restitution fine and assessments*

Relying upon *Dueñas*, defendant contends that the trial court's imposition of the $300 restitution fine and $70 in assessments without an ability-to-pay hearing (1) violated due process and (2) constituted cruel and unusual punishment. These are constitutional questions that we review de novo. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1154.)

11

We reject defendant's due process-based argument for two reasons. First, the sole basis for defendant's argument is *Dueñas*, *supra*, 30 Cal.App.5th 1157. However, we have rejected *Dueñas*'s reasoning. (See *People v. Hicks* (2019) 40 Cal.App.5th 320.) Second, even if *Dueñas* were good law, the trial court's failure to conduct an ability-to-pay hearing when imposing $370 in monetary obligations was harmless because defendant will earn more than twice that amount as prison wages prior to his release. (Accord, *People v. Johnson* (2019) 35 Cal.App.5th 134, 139 ["The idea that [defendant] cannot afford to pay $370 while serving an eight-year prison sentence is unsustainable."].)

We also reject defendant's argument that the $370 in monetary obligations constitutes cruel and unusual punishment. Whether such an obligation is excessive for these purposes turns on whether it is "grossly disproportional to the gravity of [the] defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334, superseded by statute on other grounds as stated in *United States v. Jose* (2001) 499 F.3d 105, 110.) Factors relevant to gross disproportionality include "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay. [Citations.]" (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.) Under this standard, a defendant's ability to pay is *a* factor, not *the only* factor. (*Bajakajian*, at pp. 337-338.) Applying these factors, we conclude that the minimum monetary obligations totaling $370 are not grossly disproportionate to his crime of furnishing a controlled substance to his 16-year-old girlfriend that resulted in her death from a drug overdose.

**DISPOSITION**

The judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ