# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

TREYVON LOVE OLLO,
Defendant and Appellant.

S260130

Second Appellate District, Division Two
B290948

Los Angeles County Superior Court
KA115677

June 21, 2021

Justice Liu authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Cuéllar, Kruger, Groban, and Jenkins concurred.

Opinion of the Court by Liu, J.


Penal Code section 12022.7, subdivision (a) provides that a defendant who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony shall receive an additional three-year term of imprisonment following the prison term imposed for the underlying offense. In 2018, a Los Angeles County jury convicted defendant Treyvon Love Ollo of furnishing or giving a controlled substance to a minor (Health & Saf. Code, § 11353) and found true the allegation that Ollo had personally inflicted great bodily injury upon the minor in the commission of the offense. The trial court imposed a nine-year prison sentence for the furnishing count, plus an additional three years for the great bodily injury enhancement. The Court of Appeal affirmed, holding as a matter of law that furnishing drugs to a victim who later overdoses is sufficient for a great bodily injury enhancement. (*People v. Ollo* (2019) 42 Cal.App.5th 1152, 1158 (*Ollo*).)

We granted review to determine whether a defendant who furnishes a controlled substance "personally inflicts" great bodily injury whenever the person furnished with the drugs suffers such injury from using the drugs. (Pen. Code, § 12022.7; all undesignated statutory references are to the Penal Code.) In other words, is a conviction for furnishing or giving a controlled substance sufficient as a matter of law to establish personal infliction of great bodily injury under section 12022.7? We hold that the act of furnishing is not by itself sufficient to establish

personal infliction. Whether a defendant who furnishes drugs personally inflicts such injury depends on the facts of the particular case. To determine whether a defendant personally inflicts an injury, factfinders and courts must examine the circumstances of the underlying offense and the defendant's role in causing the injury that followed.

# I.

On June 29, 2017, 18-year-old Ollo sent his 16-year-old girlfriend, Reina, a text message telling her that he had cocaine. Reina arrived at Ollo's house around 5:00 p.m. Reina used an identification card to separate two lines of white powder, and she then snorted one line. Ollo did not partake. He later told the police that the powder "smell[ed] like gasoline" and was less white than the cocaine he usually purchased. Around 7:30 or 8:00 p.m., 30 minutes after snorting the substance, Reina fell asleep. At 9:00 p.m., Ollo checked to make sure Reina was still breathing. Ollo then fell asleep next to Reina.

Ollo woke up the next morning between 8:00 and 9:00 a.m. When he tried to rouse Reina, she was nonresponsive, cold, and stiff. Ollo sent text messages to a friend asking for help putting Reina in a car to take her to the hospital, but the friend said he did not want to get involved. Ollo then called 911. Reina was pronounced dead at the scene.

A white powdery substance collected from the dresser near Reina's body tested positive for fentanyl. Toxicology samples collected during Reina's autopsy also tested positive for fentanyl. The medical examiner determined that Reina died from fentanyl intoxication.

Ollo was charged with furnishing, giving, or offering to furnish or give a controlled substance to a minor. (Health & Saf.

Code, § 11353.) The prosecutor further alleged that in the commission of this crime, Ollo personally inflicted great bodily injury upon Reina. (§ 12022.7, subd. (a).) After the prosecutor presented her case-in-chief, Ollo moved to dismiss the allegation of great bodily injury. The court denied the motion. Defense counsel then requested clarification of the court's order and asserted that he "should be able to argue whether the facts meet the elements" of the great bodily injury enhancement. The court, relying on *People v. Martinez* (2014) 226 Cal.App.4th 1169 (*Martinez*), responded, "He wants to argue she's responsible for her own death, she took the drugs on her own volition, right? And according to these cases I don't think you can argue that." Defense counsel objected, arguing that the case law cited by the court was "very distinguishable as to the acts" and that "it would be a complete violation of Mr. Ollo's Sixth Amendment right to prevent [defense counsel] from arguing whether or not facts from the stand meet the elements." The court concluded this exchange by stating, "If your argument is going to be [Ollo] gave [Reina] the drugs — if you believe he gave her the drugs, he's not responsible because she voluntarily took them, I don't think that can be done because I think it's in contravention to [*Martinez*]."

In his closing statement, defense counsel argued that there was no evidence Ollo gave the fentanyl to Reina. He did not discuss whether the facts met the elements of the great bodily injury enhancement. The jury convicted Ollo of offering a controlled substance to a minor and furnishing or giving away a controlled substance to a minor. It also sustained the allegation that Ollo personally inflicted great bodily injury upon Reina within the meaning of section 12022.7, subdivision (a).

The court sentenced Ollo to nine years in prison, plus an additional three years for the great bodily injury enhancement.

On appeal, Ollo argued that the trial court erred by limiting defense counsel's closing argument. The Court of Appeal affirmed. (*Ollo*, *supra*, 42 Cal.App.5th at pp. 1158–1159.) It noted that "trial courts enjoy ' "great latitude" ' in regulating the permissible scope of closing argument . . . , and on that basis may preclude any argument that is contrary to the law." (*Id.* at p. 1156, citation omitted.) It then held that "a defendant's act of furnishing drugs and the user's voluntary act of ingesting them constitute concurrent direct causes, such that the defendant who so furnishes personally inflicts great bodily injury upon his victim when she subsequently dies from an overdose." (*Id.* at p. 1158.) Acknowledging the breadth of its holding, the court said that "drug dealers are liable for additional prison time *whenever* the persons to whom they furnish drugs are subjected to great bodily injury due to their drug use." (*Id.* at p. 1159, italics added.) We granted review.

## II.

"California has many sentencing statutes that increase the prison term otherwise available for the charged offense." (*People v. Modiri* (2006) 39 Cal.4th 481, 491 (*Modiri*).) These sentence enhancements " 'typically focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves.' " (*People v. Ahmed* (2011) 53 Cal.4th 156, 161 (*Ahmed*).) "[T]here are at least two types of sentence enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense." (*People v.*

*Coronado* (1995) 12 Cal.4th 145, 156.) The first category generally focuses on "the *defendant's status* as a repeat offender." (*Ibid.*) The second category "arise[s] from the *circumstances of the crime* and typically focus[es] on what the defendant did when the current offense was committed." (*Id.* at p. 157.) Section 12022.7 belongs to the second category. (*Ahmed*, at p. 161.) It provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (§ 12022.7, subd. (a).)

The issue is whether a defendant who furnishes a controlled substance "personally inflicts" great bodily injury as a matter of law whenever a person to whom he or she provides drugs dies or suffers other great bodily injury from using the drugs. (§ 12022.7, subd. (a).) We review this question of statutory interpretation de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) Ollo does not raise a challenge to the sufficiency of the evidence to support a great bodily injury enhancement, so we express no view on whether the record here, viewed "in the light most favorable to the judgment," contains substantial evidence in support of the enhancement — "that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Ollo and the Attorney General agree that "the act of providing drugs to a person who subsequently overdoses should not automatically result in a great bodily injury enhancement." We agree as well. As explained below, whether the furnishing

of drugs constitutes personal infliction within the meaning of section 12022.7 depends on the circumstances underlying the furnishing offense. A fact-specific inquiry is required to determine whether a defendant personally inflicted great bodily injury where such injury resulted from ingestion of the furnished drugs.

We begin with the language of section 12022.7. We have previously observed that the meaning of "personally inflict" is clear and unambiguous in the context of injuries resulting from the direct application of physical force. (*People v. Cole* (1982) 31 Cal.3d 568, 572 (*Cole*).) Commonly understood, the term "personally" refers to "an act performed 'in person,' and involving 'the actual or immediate presence or action of the individual person himself (as opposed to a substitute, deputy, messenger, etc.).' " (*Modiri*, *supra*, 39 Cal.4th at p. 493, quoting 9 Oxford English Dict. (2d ed.1989) p. 599.) The verb "to inflict" means " 'to lay (a blow) on: cause (something damaging or painful) to be endured: impose.' " (*Modiri*, at p. 493, quoting Webster's 3d New Internat. Dict. (2002) p. 1160.) The meaning of the statutory requirement that a defendant personally inflict the victim's injury does not differ from its nonlegal meaning. (*People v. Cross* (2008) 45 Cal.4th 58, 68 (*Cross*).) "[T]he phrase 'personally inflicts' means that someone 'in person' . . . , that is, directly and not through an intermediary, 'cause[s] something (damaging or painful) to be endured.' " (*Ibid.*, citation omitted.)

The meaning of "personally inflict" is less clear in the context of a drug furnishing offense where the defendant provides a controlled substance and the injury arises only after the victim ingests the substance. But nothing in the language of section 12022.7 suggests that all acts of providing a controlled substance subsume the personal infliction of injuries resulting

from consumption of the substance. Our precedent has held that whether a defendant personally inflicts an injury depends on the facts of the particular case rather than the charged offense.

In *Ahmed*, we reviewed a trial court's imposition of enhancements for "personally inflict[ing] great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony" (§ 12022.7, subd. (e)) and "personally us[ing] a firearm in the commission of a felony or attempted felony" (§ 12022.5, subd. (a)). We explained that the sentence enhancements authorized under sections 12022.5 and 12022.7 "arise from the *circumstances of the crime* and typically focus on what the defendant did when the current offense was committed." (*Ahmed, supra*, 53 Cal.4th at p. 161.) This indicates that the applicability of the enhancements depends on the circumstances underlying the offense and the defendant's actions in committing the crime.

In *Modiri*, we construed the identical phrase "personally inflicts great bodily injury" in section 1192.7, subdivision (c)(8). (*Modiri, supra*, 39 Cal.4th at pp. 493–494.) We explained that in the context of an assault conviction, personal infliction "calls for the defendant to administer a blow or other force to the victim" and "for the defendant to do so directly rather than through an intermediary." (*Id.* at p. 493.) "[T]he defendant's role in both the physical attack and the infliction of great bodily injury cannot be minor, trivial, or insubstantial." (*Id.* at p. 494.) Such determinations regarding a defendant's role in the physical attack and resulting injury cannot be made from a defendant's assault conviction alone. Instead, the factfinder must examine the circumstances underlying the conviction. (See *People v. Corona* (1989) 213 Cal.App.3d 589, 594 [examining "the conduct of [defendant] during the attack" to

determine whether there was sufficient evidence to support the finding that he personally inflicted the victim's injury]; *People v. Valenzuela* (2010) 191 Cal.App.4th 316, 323 (*Valenzuela*) ["Without additional facts regarding the crime," defendant's "bare plea" to reckless driving that proximately causes great bodily injury (Veh. Code, § 23104, subd. (b)) "does not prove he personally inflicted great bodily injury on his victims."].)

Legislative history also counsels against the broad application of section 12022.7, subdivision (a) to all defendants whose furnishing of drugs results in great bodily injury. In 1977, the Legislature amended section 12022.7 by adding the term "personally" before the word "inflicts." (Stats. 1977, ch. 165, § 94, eff. June 29, 1977; see *Criminal Procedure* (1978) 9 Pacific L.J. 281, 472 ["Section 12022.7 now clearly requires that in order for the three year enhancement to apply, the 'great bodily injury' must be personally inflicted by the defendant."].) "[T]he Legislature intended the designation 'personally' to limit the category of persons subject to the enhancement" such that an additional penalty for causing great bodily injury is imposed "only on those principals who perform the act that directly inflicts the injury." (*Cole*, *supra*, 31 Cal.3d at p. 571.) "[O]ne who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7." (*Ibid.*) The 1977 amendment expresses a legislative intent to endorse a "restricted definition of the class of individuals subject to the enhanced penalty for the infliction of great bodily injury." (*Id.* at p. 579.)

Furnishing a controlled substance may take many different forms, and not all furnishers fall within the class of individuals who "perform the act that directly inflicts the injury." (*Cole*, *supra*, 31 Cal.3d at p. 571.) Two cases illustrate

this point and demonstrate why a fact-specific analysis accords with the Legislature's intent.  In *Martinez*, the case on which the trial court here relied, the defendant was convicted of three counts of furnishing a controlled substance after supplying an individual with six to seven 10-milligram methadone pills and six to eight 10-milligram hydrocodone pills over the course of a night of drinking. (*Martinez*, *supra*, 226 Cal.App.4th at p. 1178.) The defendant supplied the pills "knowing that the drugs were more dangerous when combined with alcohol" and continued to supply drugs to the individual while "watch[ing] her continue to consume alcohol and become intoxicated, so intoxicated that [the defendant] felt she was not in any condition to drive." (*Id.* at p. 1186.)  The individual overdosed due to her consumption of "a lethal quantity of drugs." (*Ibid.*)  On those facts, the court found substantial evidence that the defendant personally inflicted great bodily injury within the meaning of section 12022.7. (*Martinez*, at p. 1186.)

In *People v. Slough* (2017) 11 Cal.App.5th 419, 425 (*Slough*), the defendant supplied heroin to an individual in exchange for money.  After this exchange, the defendant and the individual went their separate ways. (*Ibid.*)  The individual returned home, injected the heroin, and overdosed. (*Id.* at p. 422.)  Although the defendant supplied the heroin, he played no part in the individual's ingestion of the drugs. (*Id.* at p. 425.) The court concluded there was insufficient evidence to support a finding that the defendant personally inflicted great bodily injury. (*Id.* at pp. 424–425.)  The court distinguished *Martinez* on the ground that there "the defendant repeatedly supplied drugs to the victim while observing her increasing intoxication; the furnishing was akin to administering." (*Slough*, at p. 425.)

In *Martinez*, the court reasonably characterized the defendant's act of personally providing a lethal quantity of drugs to the victim while observing her increasing intoxication as a direct cause of her overdose. (See *Martinez, supra*, 226 Cal.App.4th at p. 1186.) In *Slough*, by contrast, the defendant provided drugs but played no role in the victim's ingestion. The *Slough* court reasonably concluded that because the defendant "neither performed nor participated in the act that directly inflicted the injury," the great bodily injury enhancement could not apply. (*Slough, supra*, 11 Cal.App.5th at p. 425.) If the enhancement were to apply to defendants like those in *Slough*, who play no part in the act that directly inflicts the injury, the term "personally" in the phrase "personally inflicts" would be read out of section 12022.7. To effectuate the Legislature's intent to impose the enhancement only on "those who directly perform the act that causes the physical injury to the victim" (*Cole, supra*, 31 Cal.3d at p. 579), we hold that the applicability of section 12022.7, subdivision (a) to cases where a victim suffers great bodily injury from using drugs unlawfully furnished by the defendant depends on the particular circumstances of each case.

In determining whether the personal infliction requirement is satisfied, the key inquiry is whether "the furnishing was akin to administering." (*Slough, supra*, 11 Cal.App.5th at p. 425.) When a defendant *administers* the drugs without the victim's consent, the defendant has participated in the injury-causing act and thus may be held liable for personal infliction of the overdose. Where a defendant simply *provides* drugs to a user who subsequently overdoses, the defendant facilitates but does not personally inflict the overdose. This distinction recognizes the importance of the voluntariness of a victim's ingestion in the determination of whether a defendant

personally inflicts great bodily injury in the drug furnishing context. To be eligible for the great bodily injury enhancement, a defendant's participation in the act of ingestion must occur in circumstances in which the victim is not an independent "intermediary" capable of breaking the "personal[]" nexus between the defendant and the overdose injury. (*Cross*, *supra*, 45 Cal.4th at p. 68.) Whereas a victim with full capacity who voluntarily chooses to ingest a controlled substance is an independent intermediary, a victim who ingests drugs as a result of coercion or with diminished capacity is not. Because the victim's intoxication in *Martinez* impaired her ability to stop consuming drugs, her consumption was not fully voluntary.

## III.

The Court of Appeal below warned that if a victim's independent ingestion of drugs were to shield the drug furnisher from a finding of personal infliction, this would contravene the plain language of section 12022.7 by shielding an entire class of crimes from the enhancement. (*Ollo*, *supra*, 42 Cal.App.5th at p. 1158.) As the court observed, section 12022.7, subdivision (g) lists certain crimes that cannot support a great bodily injury enhancement. (*Ollo*, at p. 1158.) This list consists of murder, manslaughter, arson as defined in section 451, and unlawfully causing fire as defined in section 452; it does not include furnishing controlled substances. (*Ollo*, at p. 1158.) "Were we to conclude that a victim's voluntary ingestion of a drug furnished by another breaks the causal chain as a matter of law," the court reasoned, "we would effectively be adding the crime of furnishing controlled substances to [section 12022.7,] subdivision (g)'s list." (*Ibid*.) This reasoning assumes that the only alternatives are to hold as a matter of law that the furnishing of drugs is either sufficient or insufficient to establish

personal infliction. But, as *Martinez* and *Slough* suggest, we are not faced with an all-or-nothing choice. Instead, the statute requires a fact-specific inquiry that focuses on whether the defendant's actions in furnishing the drugs amounted to personal infliction of injury on the victim.

The Court of Appeal also reasoned that applying the enhancement to "drug dealers . . . whenever the persons to whom they furnish drugs are subjected to great bodily injury due to their drug use" serves the deterrent goals of section 12022.7. (*Ollo*, *supra*, 42 Cal.App.5th at p. 1159.) This reasoning is in tension with *Modiri*, where we said the great bodily injury enhancement aims to "deter[] and punish[] the infliction of gratuitous harm not inherent in the crime itself." (*Modiri*, *supra*, 39 Cal.4th at p. 492; see *Ahmed*, *supra*, 53 Cal.4th at p. 163 ["enhancement provisions . . . focus on *aspects* of the criminal act that are not always present and that warrant additional punishment"].) A fact-based approach better serves the policy goals elucidated in *Modiri*. As one example, a court might find that the particular way in which a defendant provided a controlled substance undermined the victim's voluntary choice as to whether to consume the drug and thereby directly caused the victim to use the drug in a more dangerous manner than the mere act of selling drugs on the street. (See, e.g., *Martinez, supra*, 226 Cal.App.4th at p. 1186 [defendant furnished drugs mixed with alcohol and continued to supply the drugs after observing the victim had become intoxicated].) Applying the enhancement in this circumstance would achieve a deterrent effect independent of the deterrent effect of the punishment for the underlying crime of furnishing drugs.

Further, the Court of Appeal reasoned that "a defendant's act of furnishing drugs and the user's voluntary act of ingesting

them constitute concurrent direct causes. . . . [¶] . . . [A] defendant directly causes — and hence, personally inflicts — great bodily injury when his conduct, together with the victim's, accidentally produces that injury." (*Ollo*, *supra*, 42 Cal.App.5th at p. 1158.) The Court of Appeal is correct to recognize that more than one person may personally inflict a single injury. In *Modiri*, we found that a defendant involved in a group beating need not have struck the injuring blow to support a great bodily injury enhancement, provided that the defendant's personal application of force shows direct participation in the group beating. (*Modiri*, *supra*, 39 Cal.4th at p. 493.) In reaching this conclusion, we explained that "[t]he term 'personally,' which modifies 'inflicts' . . . , does not mean *exclusive* . . . ." (*Ibid.*, italics added.) "[N]othing in the terms 'personally' or 'inflicts,' when used in conjunction with 'great bodily injury' . . . necessarily implies that the defendant must act alone in causing the victim's injuries." (*Ibid.*; see *People v. Dominick* (1986) 182 Cal.App.3d 1174, 1210–1211 [defendant who grabbed the victim's hair and held the victim while a codefendant struck her was directly responsible for the injury the victim suffered when she fell while pulling away].)

However, a person who merely aids, abets, or directs another to inflict an injury is not subject to the enhanced penalty of section 12022.7. In *Cole*, we held that the defendant did not personally inflict injury when he directed the attack and blocked the victim's escape but did not himself inflict the injuries. (*Cole*, *supra*, 31 Cal.3d at pp. 571–572.) Applying *Cole*, the Courts of Appeal have held that "[t]o 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury." (*People v. Rodriguez* (1999) 69 Cal.App.4th 341, 349; see *People v. Warwick* (2010) 182 Cal.App.4th 788, 793

["[F]or the [great bodily injury] enhancement to apply, the defendant must be the *direct*, rather than proximate, cause of the victim's injuries."]; *Valenzuela, supra,* 191 Cal.App.4th at p. 321 ["[P]roof a defendant proximately caused great bodily injury does not constitute proof the defendant personally inflicted such injury."].) The distinction these courts have drawn between proximate causation and personal infliction is sound: "Proximately causing and personally inflicting harm are two different things. The Legislature is aware of the difference. When it wants to require personal infliction, it says so." (*People v. Bland* (2002) 28 Cal.4th 313, 336.)

The Legislature's use of the term "personally inflict" in section 12022.7 signifies its intent to punish only actors who directly inflict harm. In some circumstances, a defendant's act of furnishing drugs and a user's act of ingesting them constitute concurrent direct causes of a subsequent injury. (E.g., *Martinez, supra,* 226 Cal.App.4th 1169.) In others, the act of furnishing drugs is merely the proximate cause of injury suffered by the drug user. (E.g., *Slough, supra,* 11 Cal.App.5th 419.) Distinguishing between such cases and applying section 12022.7 only where the defendant causes injury "directly and not through an intermediary" (*Cross, supra,* 45 Cal.4th at p. 68) require a fact-specific analysis of the circumstances of the furnishing offense, including the role of the defendant and the victim in the events resulting in injury.

## IV.

We conclude the trial court erred as a matter of law by precluding defense counsel from arguing that the facts of this case do not support a great bodily injury enhancement in light of Reina's voluntary ingestion of the controlled substance. When

defense counsel requested permission to argue that the facts of this case do not meet the elements of the great bodily injury enhancement, the court responded that it was "contrary to law" to argue that Reina "voluntarily took the drugs." The court told defense counsel that he was only permitted to argue that Ollo was not subject to the enhancement because he did not furnish the drugs, and Reina brought her own drugs. The court then stated, "If your argument is going to be [Ollo] gave [Reina] the drugs" but "he's not responsible because she voluntarily took them, I don't think that can be done."

The trial court's statement of the law contravenes our reasoning that the voluntariness of a victim's ingestion is a key consideration in the determination of whether a defendant personally inflicts great bodily injury in the drug furnishing context. The trial court erred by precluding defense counsel from making a legally valid argument that the facts of this case do not support a great bodily injury enhancement. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 159 ["a disposition that rests on an error of law constitutes an abuse of discretion"].)

## CONCLUSION

We reverse the judgment and remand to the Court of Appeal to apply the holding herein and to consider any other issues raised but not resolved in the Court of Appeal's original consideration.

**LIU, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Ollo

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 42 Cal.App.5th 1152
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S260130
**Date Filed:** June 21, 2021

---

**Court:** Superior
**County:** Los Angeles
**Judge:** Steven D. Blades

---

**Counsel:**

Rachel Lederman, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Colleen M. Tiedemann and Michael R. Johnsen, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Rachel Lederman
Attorney at Law
558 Capp St.
San Francisco, CA 94110
(415) 282-9300

Colleen M. Tiedemann
Deputy Attorney General
300 S. Spring St., Suite 1702
Los Angeles, CA 90013
(213) 269-6599