Filed 3/18/22  P. v. Thomas CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MYRON THOMAS,<br><br>    Defendant and Appellant. | D078677<br><br><br><br>(Super. Ct. No. SCD179132) |

APPEAL from an order of the Superior Court of San Diego County, Peter L. Gallagher, Judge.  Reversed and remanded with directions.

Kenneth J. Vandevelde, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, A. Natasha Cortina and Annie Featherman Fraser for Plaintiff and Respondent.

In 2005, a jury convicted Myron Thomas of second degree murder (Pen. Code,[1] § 187, subd. (a); count 1), assault with a deadly weapon

---

[1]    Undesignated statutory references are to the Penal Code.

(§ 245, subd. (a)(3); counts 2, 3 and 4), and discharging a weapon from a motor vehicle (§ 12034, subd. (c); count 5). As to count 1, the jury found true allegations that Thomas intentionally and personally discharged a firearm (an assault weapon) within the meaning of section 12022.53, subdivisions (c) and (d) and personally used an assault weapon within the meaning of section 12022.5 subdivision (b). The jury found weapons allegations to be true with respect to the remaining counts.[2] The court sentenced Thomas to an indeterminate term of 65 years to life (15 years to life on count 1 and 25 years to life each on the section 12022.53, subdivision (c) enhancements on counts 1 and 5), plus a determinate term of 23 years four months.[3]

In February 2019, Thomas petitioned for recall of his sentence and resentencing of his determinate term to low terms under section 1170.91. The trial court granted the petition but denied Thomas's request for low terms on his determinate sentence.

Thomas contends the court misunderstood and failed to exercise its discretion required by section 1170.91, which "obligate[s] a sentencing court

---

[2] As to all the remaining counts, the jury found Thomas personally used a firearm within the meaning of section 12022.5, subdivision (b). As to count 2, the jury additionally found Thomas personally inflicted great bodily injury on the victim within the meaning of section 12002.7, subdivision (a), and inflicted great bodily injury on the victim as a result of discharging a firearm from a motor vehicle in violation of section 12022.55. As to count 5, the jury additionally found Thomas intentionally and personally discharged a firearm within the meaning of section 12022.53, subdivisions (c) and (d).

[3] The determinate term consisted of an eight-year midterm, six-year enhancement (§ 12022.5, subd. (b)) and three-year enhancement (§ 12022.7, subd. (a)) on count 2; 32 months plus a two-year enhancement (§12022.5, subd. (b)) on count 3; and 20 months (one-third the five-year midterm) on count 5. The court stayed under section 654 the sentence on count 4 and remaining enhancements.

2

to consider a criminal defendant's qualifying service-related conditions as mitigating circumstances in making discretionary sentencing choices." (*People v. Panozo* (2021) 59 Cal.App.5th 825, 831.) Thomas asks us to remand for resentencing with directions that the court consider his posttraumatic stress disorder (PTSD) as a mitigating factor, as according to him, the record does not clearly indicate it would have reached the same sentencing choices had it been aware of its discretion. We agree the record does not unambiguously show the court understood its discretion under section 1170.91. Accordingly, we reverse the order and remand for a new resentencing hearing at which the court should satisfy its statutory obligation under section 1170.91.

## FACTUAL AND PROCEDURAL BACKGROUND

We take the summary of facts underlying Thomas's conviction from the probation officer's report. In 2003, Thomas, then in the Marine Corps, went to a nightclub with others where they had an altercation with several persons. Thomas left in a vehicle with the others to a fast food restaurant and saw someone there from the same group that had been at the nightclub. Thomas and the others then drove about 10 minutes to the house where Thomas was staying, where he was heard angrily cursing and seen retrieving an AK-47 assault rifle. Thomas and the others went back to the fast food restaurant. Thomas shot at the victims five or six times, killing one of them and injuring three others. The murder weapon was later found in Oregon, after Thomas's sergeant revealed the sergeant had given it to another Marine to dispose of.

Following Thomas's convictions, the court sentenced him in August 2005.

In early 2019, Thomas petitioned for recall of his sentence and resentencing under section 1170.91. He stated he had served as a member of the United States military from September 2002 to April 2004, and that his service-connected injuries were not addressed at the time he was sentenced. He later submitted a statement in mitigation, attaching a 2007 psychological report as well as Department of Corrections mental health treatment plans from 2006, 2007, 2008, 2009 and 2010 reflecting diagnoses of depressive disorder and PTSD, with hallucinations, nightmares, and flashbacks.

In response, the People asserted Thomas's claim of combat-induced PTSD was "uncorroborated" and unsupported by his military records. They argued PTSD did not play a role in the murder, and that a psychiatrist who had examined Thomas in August 2004, Dr. Mark Kalish, "did not find support for a diagnosis of PTSD" but instead "all but ruled out PTSD as playing a role in the underlying offense." The People quoted from the doctor's report: "[I]t appears that [Thomas] . . . got into an altercation and was disinhibited by his use of alcohol. The fact that he returned to his residence to obtain a weapon suggests that the instant offense was planned and that [Thomas] had an opportunity to think and deliberate prior to his actions. This does not appear to be the impulsive response of an individual acting out of fear as in a combat situation."[4] The People further argued that any PTSD as a mitigating circumstance was far outweighed by the aggravating factors

---

[4] Dr. Kalish's report additionally states: "[Thomas] was abusing alcohol at the time of the instant offense, and this certainly seems to have been a factor in the instant offense. [¶] [Thomas] had recently served in an active combat unit and appears to have been exposed to life-threatening stressors which could have created [PTSD]. However, based on my examination, I do not feel that [Thomas] did in fact develop [PTSD]."

given Thomas's "blatantly violent" conduct, pointing out the court had sentenced him to an already-mitigated middle term.

In an unreported October 2019 hearing, the trial court granted Thomas's petition, recalled his sentence, and scheduled a resentencing hearing for January 2020. On the date of Thomas's resentencing hearing, the probation department submitted a supplemental report, referring the court back to the original presentence and supplemental reports from 2005 and stating it "contains all the pertinent information regarding the offense and sentencing data." The court continued the resentencing hearing to February 2020.

In February 2020, the probation department submitted a second supplemental report. In it, the probation officer observed the matter had been continued "to address a new factor in mitigation." The report listed Thomas's mental condition as a second possible circumstance in mitigation: "[Thomas] was suffering from a mental condition that significantly reduced his culpability for the crime. The defendant stated in the [probation officer's] [r]eport dated 07/29/05 . . . [:] 'I was only back from Iraq 27 days.' He admitted that his training was still 'fresh' in his head." The probation officer recommended Thomas be sentenced to the low term on count 2 as the principal determinate term and be given other low terms on enhancements, making Thomas's total recommended sentence 65 years to life plus 15 years four months. The report cited one circumstance in aggravation, which was that the manner in which the crime was committed indicated planning.

The court again continued the matter. In March 2020, the probation department submitted a third supplemental report. The probation officer reported that in February 2020, the district attorney advised "there was a psychological evaluation performed on the defendant in 2004 which ruled out

5

. . . [ ]PTSD[ ]" and given that information the probation officer "abandon[ed]" the mitigating factor relating to Thomas's mental condition. The probation officer again referred the court back to the original July 2005 presentence report and August 2005 supplemental report (providing a corrected prison term breakdown). Those reports listed only Thomas's lack of prior criminal record as a circumstance in mitigation.

The resentencing hearing took place in March 2020. Thomas's counsel agreed section 1170.91 authorized resentencing only with respect to the determinate term. She pointed out she had submitted documentation to probation and to the court indicating Thomas had been diagnosed with PTSD, which the court viewed in granting his resentencing request and finding eligibility. She asked the court to follow the probation officer's February 2020 recommendation and impose low terms on Thomas.

The court confirmed it had the various probation reports and that Thomas's original sentence was 23 years four months. It said, "And now probation has recalculated recommending the lower term, correct?" The prosecutor responded, "That's incorrect, judge." He advised the court that the probation officer's recommendation had changed in the latest report, stating with respect to the February 2020 report: "I think [the probation officer] was under the misimpression that PTSD, that there's evidence PTSD played a role in the offense. I believe after that I pointed her to Dr. Kalish's report. And she abandoned the low term in . . . the most recent [probation] report, . . . in which the original sentence is recommended. In other words, no change." The probation officer confirmed that was the case.

Thomas's counsel argued that the law did not require PTSD to have actually caused Thomas to commit the offense. She pointed out that Thomas's moving papers showed he suffered from PTSD and continued to

6

suffer from it and that his service-related disorder, combined with his youth and lack of criminal history, were mitigating factors. She asked the court to account for those considerations and sentence Thomas to the low term.

The prosecutor replied: "So, judge, at the end of the day, this comes down to mitigants. In other words, are there any mitigants present now that were not considered at the time of the original sentencing that [section] 1170.91 allows the court to take into consideration now. . . . *What we're looking at here is not any new mitigants that are available to Mr. Thomas.* You know, PTSD was brought up at the original, you know, resolution of this case by a guilty verdict. That's why I attached the report by Dr. Kalish who examined Mr. Thomas prior to sentencing, found that PTSD did not play a role. *If it didn't play a role, it's not a mitigant.*" (Italics added.) The prosecutor accused Thomas of "trying to game the system from prison." Thomas's counsel pointed out in response that Thomas was diagnosed with PTSD in August 2006, before the new law's enactment.

The court declined to change Thomas's sentence. It began: "The facts of this case were fairly straightforward, you know, with a little beef in the nightclub, the veteran nightclub, and then it continued at the [fast food restaurant]. There was some report that it may have happened at the outside of the Navy base itself, but it appears it was at the [restaurant]. The court knowing that [section] 1170.9 did say I need to consider circumstance or suffering from PTSD as a result of military service was or was not considered as a factor in mitigation [*sic*]."

About Thomas's claim of PTSD, the court continued: ". . . [F]or the record, I looked at the issue of PTSD, and I'm not suggesting that [Thomas] does not have some sort, form of PTSD, not so sure it was part and parcel of this particular incident." The court stated that some of Thomas's claims

7

about his military service (rank, claims of combat, etc.) were not supported by his military record.  The court stated: "I read Dr. Kalish's report and even before reading Dr. Kalish's report, reading other instances of how much alcohol Mr. Thomas had consumed, I was concerned about the alcohol aspect.  It is clear from Dr. Kalish's report done at the time, that [Thomas] was heavily intoxicated, even put out of the nightclub, that there were three instances where he said he was under fire, taking troops to a nuclear reactor, that they were to stop traffic and came under fire, and an attack with city hall while on guard[5] is different from what was told later on [*sic*]."  The court acknowledged some of the exhibits cited Thomas's PTSD.  But the court stated it considered "whether [Thomas's] stressors could create PTSD" and concluded "it doesn't seem that they were developed as PTSD . . . ."  It declined to change Thomas's determinate term, reasoning: "[T]his incident took time, where the gun was first showed [*sic*] by one of the participants at the [restaurant], and then [for Thomas to] go home to get an automatic weapon is not the same as a combat alert reaction.  I believe this was more alcohol-fueled and not PTSD that was impulsive.  With that being said, I am going to decline to resentence to the lower term *because I don't think that PTSD was a factor in mitigation in this particular matter*, and the original sentence stays."  (Italics added.)

---

[5]     This remark refers to Dr. Kalish's report in which he wrote: "The patient recalls firing his weapon on three or four occasions.  On one occasion, the patient came under fire while making a trial run to troops at a nuclear reactor.  On a second occasion, he was stuck in traffic and taking fire.  He worried whether the driver would take the proper action while driving.  The patient recalls that he was paranoid all the time when he left the base.  On a third occasion, there was an attack on the City Hall while the patient was guarding the offices."

DISCUSSION

I. *Section 1170.91 and Standard of Review*

The Legislature enacted section 1170.91 in 2014 to be effective January 1, 2015. (Stats. 2014, ch. 163, § 2; *People v. Stewart* (2021) 66 Cal.App.5th 416, 422.) Section 1170.91, subdivision (a) presently provides in part: "If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from . . . post-traumatic stress disorder . . . or mental health problems as a result of his or her military service, the court shall consider the circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170." Thus, "[s]ince 2015, California law has required sentencing courts to consider, as mitigating factors weighing in favor of a low-term determinate sentence, any . . . mental health problems caused by a defendant's service in the United States military." (*People v. Estrada* (2020) 58 Cal.App.5th 839, 841.)

Effective January 1, 2019, the Legislature added subdivision (b), which permits retrospective relief from a final judgment for a defendant sentenced before January 1, 2015. (§ 1170.91, subd. (b)(1)(B); *People v. Stewart*, *supra*, 66 Cal.App.5th at p. 423; *People v. Coleman* (2021) 65 Cal.App.5th 817, 821.)[6]

---

[6] Subdivision (b)(1) of section 1170.91 provides in part:

"A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from . . . post-traumatic stress disorder . . . or mental health problems as a result of his or her military service may petition for a recall of sentence, before the trial court that entered the judgment of conviction in his or her case, to request resentencing pursuant to subdivision (a) if the person meets both of the following conditions:

"(A) The circumstance of suffering from . . . post-traumatic stress disorder . . . or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing.

That provision allows such a defendant to petition for recall of his or her sentence and request resentencing "pursuant to [section 1170.91,] subdivision (a)" if a qualifying service-related condition was not previously considered at the time of sentencing. (§ 1170.91, subd. (b).) The resentencing mechanism applies only to a determinate term. (*People v. Stewart*, at pp. 423-424; *People v. Estrada*, *supra*, 58 Cal.App.5th at pp. 842-843.)

Section 1170.91, subdivision (b)(3) specifies the procedure upon a court's receipt of a petition: "Upon receiving a petition under this subdivision, the court shall determine, at a public hearing held after not less than 15 days' notice to the prosecution, the defense, and any victim of the offense, whether the person satisfies the criteria in this subdivision. At that hearing, the prosecution shall have an opportunity to be heard on the petitioner's eligibility and suitability for resentencing. If the person satisfies the criteria, the court may, in its discretion, resentence the person following a resentencing hearing." (§ 1170.91, subd. (b)(3).)

We review a trial court's sentencing decisions for abuse of discretion. (*People v. Panozo*, *supra*, 59 Cal.App.5th at p. 837.) Doing so, we "evaluat[e] whether the court exercised its discretion 'in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest." ' [Citation.] An abuse of discretion is found where the court 'relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.' [Citation.] 'A failure to exercise discretion may also constitute an abuse of

---

"(B) The person was sentenced prior to January 1, 2015. This subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015."

discretion.' [Citation.] ' "A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." ' " (*Ibid*.)

To the extent resolution of Thomas's claim requires statutory interpretation, our review is de novo. (*People v. Ollo* (2021) 11 Cal.5th 682, 687; *People v. Bonilla-Bray* (2020) 49 Cal.App.5th 234, 237.)

## II. *Contentions*

Thomas contends this appeal presents a question of statutory interpretation for our independent review. He maintains the trial court here misinterpreted section 1170.91 by ruling it authorized resentencing only when a defendant's service-related mental disorder is a cause of the offense at issue. He argues that under section 1170.91, subdivision (a), once a court determines that a defendant may be suffering from a service-related mental disorder, it is required to consider that factor in mitigation when imposing a determinate term. Thomas contends that even applying an abuse of discretion standard, the court erred because it failed to exercise the discretion conferred on it by section 1170.91. Thomas urges us to remand for resentencing because the record does not clearly indicate the lower court would have reached the same conclusion had it been aware of its discretion. That is, he points out the court reached the same conclusion as the latest probation report, and argues "the record suggests that the court may well have followed the probation officer's February 10, 2020[ ] recommendation that Mr. Thomas be re-sentenced to the low term, had the People not persuaded the court, erroneously, that Mr. Thomas was not entitled to have his PTSD treated as a mitigating factor if the PTSD was not shown to have caused the offense." According to Thomas, the record is clear that the court

11

misunderstood its discretion, but even if there was some ambiguity in that regard, *People v. Panozo, supra,* 59 Cal.App.5th 825 would require remand as a court's compliance with the mandate of section 1170.91 "cannot be inferred from an ambiguous record." (*Id.* at p. 837.)

The People characterize these circumstances as a case where the court "hear[d] about the mitigating evidence related to [Thomas's] PTSD, determined that it was not enough of a mitigant to merit a low-term determinate sentence, and exercised its discretion to keep the sentence as a mid-term sentence." They assert there is no requirement that a court automatically sentence a defendant to a lower term, "just that the court shall consider the evidence, and then it *may*, in its discretion, resentence the defendant." They state: "To that end, the court determines whether, with PTSD as an additional mitigant, the mitigating factors outweighed the aggravating factors." According to the People, the trial court here did not require a causal relationship, but merely explained that the event was more alcohol-fueled and PTSD was "not particularly mitigating." They argue remand would be futile as the record indicates given the facts of the shooting and other aggravating factors the court would not have further reduced Thomas's sentence based on his service-related mental health issues.

III. *Remand Is Required Due to Ambiguity in the Record About the Court's Understanding of Its Section 1170.91 Obligation to Consider Thomas's Service-Related PTSD as a Mitigating Factor*

Following Thomas's resentencing hearing, this court decided *People v. Panozo, supra,* 59 Cal.5th 825, in which a defendant convicted of assault with a deadly weapon and other offenses presented evidence at his November 2019 sentencing hearing that he had been diagnosed with military service-related PTSD. (*Id.* at pp. 828-829, 834.) The defendant asked for probation, and his

12

counsel argued that the defendant's crimes were the byproduct of his military service, warranting probation or imposition of the lower term. (*Id.* at pp. 837-838.) Though the trial court "was plainly aware that [defendant] served in Iraq, struggled with PTSD and alcohol use, and requested probation and treatment through Veterans Court," there was no indication it considered his service-related PTSD as a mitigating factor when it denied him probation and sentenced him to a middle determinate term. (*Id.* at p. 838.)

This court remanded the matter for a new sentencing hearing for the trial court to satisfy its statutory obligations under sections 1170.9 and 1170.91. (*People v. Panozo*, *supra*, 59 Cal.App.5th at p. 841.) We reviewed sections 1170.9 and 1170.91, "[d]eferring to their unambiguous plain meaning" and observed they "speak in terms that are mandatory rather than permissive." (*Id.* at p. 836.) We held by their plain language, both statutes "unambiguously *obligate* a sentencing court to consider a defendant's service-related PTSD . . . or other qualifying conditions in making discretionary sentencing choices." (*Id.* at p. 836.) This court reasoned that given the Legislature's "resolve to mandate special consideration for affected veterans at sentencing" as reflected by amendments to the statutes, it was appropriate to abide by the rule that "a court's compliance with the mandates of section 1170.9 and 1170.91 cannot be inferred from an ambiguous record." (*Id.* at pp. 836-837.)

In *Panozo*, the record "did not unambiguously reflect[ ] [the court's] compliance" with the law. (*People v. Panozo*, *supra*, 59 Cal.App.5th at p. 837.) There, it was relatively clear: Though the court was aware that the defendant struggled with PTSD and alcohol use (*Panozo*, at p. 838), "neither the [sentencing] briefs nor the argument referenced sections 1170.9 or 1170.91 or suggested the court was *obligated* to consider Panozo's service-

13

related PTSD as a mitigating factor. These statutes were likewise not referenced in the People's sentencing brief or argument. Indeed, the prosecutor maintained there were *no* circumstances in mitigation. And although the probation report described Panozo's military service and PTSD diagnosis, it did not list these circumstances among the mitigating factors supporting a grant of probation or imposition of the lower term." (*Panozo*, at pp. 837-838.) Further, the court's oral pronouncements revealed no awareness of its obligations to consider the defendant's service-related PTSD and substance abuse: it did not make an eligibility determination as to whether the defendant had a qualifying service-related condition; it did not mention PTSD when discussing mitigating factors; and it identified only one mitigating factor—the defendant's very minimal criminal history—in imposing the middle determinate term. (*Id*. at p. 838.) The court minutes did not reference either statute and nothing in the record supported an inference the court was aware of its obligations under them when exercising its sentencing discretion. (*Ibid*.)

Under these circumstances, this court stated: "While . . . sentencing courts are generally presumed to have acted in accordance with legitimate sentencing objectives [citation], we cannot rely on that presumption here." (*People v. Panozo, supra*, 59 Cal.App.5th at p. 839.) We further stated that because the court had rejected the People's request for an upper term and to run subordinate counts consecutively, it would not be an idle act to remand for resentencing for the court to consider the statutes. (*Ibid*.) We held the record necessitated remand because it was at least ambiguous as to whether the court was aware of its statutory obligations under sections 1170.9 and 1170.91. (*Id*. at p. 840.)

Unlike *Panozo*, this case comes to us after the trial court granted

14

Thomas's request for recall and resentencing under section 1170.91, subdivision (b). The court had already determined that Thomas "may be suffering" from PTSD or mental health problems as a result of his military service and satisfied the criteria to request resentencing. The People did not challenge those findings, and Thomas's PTSD diagnosis is amply supported by his Department of Corrections mental health evaluations and treatment plans in the record.

This differing procedural posture, however, does not change the court's obligation to consider Thomas's service-related PTSD as a mitigating factor in making discretionary sentencing decisions. The petition under subdivision (b) of section 1170.91 is for resentencing "pursuant to [section 1170.91,] subdivision (a)," which, as *Panozo* held, unambiguously mandates consideration of the specified service-related disorders as a factor in mitigation. (*People v. Panozo*, *supra*, 59 Cal.App.5th at p. 836 [addressing subdivision (a) of section 1170.91].) When a defendant satisfies the criteria to request resentencing, the court conducts a resentencing hearing and "*may, in its discretion, resentence the person . . . .*" (§ 1170.91, subd. (b)(3), italics added.) The import of the italicized language is that even if a petitioning defendant such as Thomas meets the section 1170.91 criteria and thus is technically eligible for a resentencing hearing, the court nevertheless has discretion to not make any change in the defendant's sentence following that hearing. In that instance, the court still has the latitude to leave the defendant's original sentence intact, but in exercising its discretion it *must* consider the defendant's service-related disorder as a mitigating factor and weigh it with other mitigating and aggravating factors. (See *People v. Coleman*, *supra*, 65 Cal.App.5th at p. 823 [court finding a qualifying service-related condition under section 1170.91, subdivision (b) "may, in its

15

discretion" resentence the defendant following a resentencing hearing; the court "does not necessarily have to resentence the petitioner. And if it does, it need only consider the fact that the petitioner may be suffering from a qualifying condition as a result of his or her military service as one mitigating factor, along with all of the other mitigating and aggravating factors in the case. The People are free to challenge the credibility of the petitioner's claim"].) Thus, while we agree with the People that a court conducting a resentencing hearing under section 1170.91 has ample discretion to leave a sentence intact, we view the record here differently than the People in terms of what the trial court actually did and whether it unambiguously shows the court understood its obligation under section 1170.91.

Several ambiguities in the record prevent us from inferring that the trial court at the resentencing hearing was aware of its obligation under section 1170.91 to consider Thomas's service-related PTSD as a mitigating factor. First, as we have recounted above, though in February 2020 the probation department issued a new report for the court "to address a new factor in mitigation"—Thomas's PTSD—and recommended the court sentence him to low terms, after the prosecutor advised the probation officer about Dr. Kalish's 2004 conclusion that PTSD was not a factor in Thomas's offenses, the probation officer revised her report in March 2020 to *eliminate* PTSD as a factor in mitigation. Thereafter, at the resentencing hearing, the prosecutor advised the court that there were "not any new mitigants . . . available to Thomas" for the court to consider. In short, both the probation department and the prosecutor removed Thomas's PTSD from the court's consideration as a mitigating factor.

16

We acknowledge that in making its sentencing decision, the court stated it had "looked at the issue of PTSD . . . ." But it went on to say that it "[didn't] think that PTSD was a factor in mitigation in this particular matter . . . ." As stated above, the People interpret this remark as the court balancing the aggravating and mitigating factors, and saying Thomas's PTSD was not sufficiently mitigating to lower his determinate sentence from the middle term. But the record in our view is sufficiently unclear as to what the court meant, particularly where PTSD was removed from the court's consideration as a mitigating factor by the probation officer in her final supplemental report, and the court expressly stated it did not consider PTSD a factor in mitigation. As in *Panozo*, the record does not unambiguously indicate the court complied with its obligation under section 1170.91 to consider Thomas's service-related PTSD as a mitigating factor when it conducted the resentencing hearing. Rather, the ambiguities prevent us from drawing such an inference. (*People v. Panozo*, *supra*, 59 Cal.App.5th at pp. 838-839.)

Nor does the record " 'clearly indicate[ ] that the trial court would have reached the same conclusion if it had been aware of its discretion.' " (*People v. Panozo*, *supra*, 59 Cal.App.5th at p. 839, quoting *People v. Barber* (2020) 55 Cal.App.5th 787, 814; see also *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [where a court is unaware of discretionary sentencing choices, remand for resentencing is required unless the record " 'clearly indicate[s]' " the trial court would have reached same conclusion if aware of such discretion].) The court was plainly interested in the probation department's recommendations, which changed depending on whether the probation officer considered Thomas's PTSD as a mitigating factor. The probation department should be given the opportunity to make a new recommendation with Thomas's PTSD

17

listed as a factor in mitigation, and the court should be permitted to consider that recommendation, and use its "wide discretion" in weighing all the mitigating and aggravating factors (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401) in reaching its discretionary sentencing decision at a new resentencing hearing. Under the circumstances, a remand for a new hearing is warranted for the court to consider section 1170.91's mandate in selecting an appropriate determinate term. (*Panozo*, at p. 840.) We express no view on how the court should exercise its discretion, which includes the discretion to leave Thomas's original sentence intact.

## DISPOSITION

The order is reversed and the matter remanded for a new resentencing hearing at which the trial court should satisfy its statutory obligation under section 1170.91.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

DATO, J.

18