Filed 12/9/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B334294 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA453413) |
| v. | |
| WENDALL PORTER MUHAMMAD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge. Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In 2018, defendant and appellant Wendall Porter Muhammad pled no contest to attempted murder. Muhammad now appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1] The record of conviction establishes that Muhammad is ineligible for resentencing as a matter of law. The only murder theory indicated by the record of conviction is that Muhammad was convicted as a direct perpetrator of the attempted murder and that he acted alone in stabbing the victim. Muhammad admitted he inflicted great bodily injury on the victim in the course of the attempted murder. We affirm the order denying Muhammad's petition for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of January 1, 2017, Muhammad stabbed Moses Sow with a knife in an altercation captured on surveillance video.

The People charged Muhammad by information with the attempted willful, deliberate, and premeditated murder of Sow. (§§ 187, subd. (a), 664; count 1.) They also charged him with assault with a deadly weapon (§ 245 subd. (a)(1); count 2) and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 3). The information further alleged that Muhammad personally inflicted great bodily injury on Sow in the commission of counts 1 and 2 (§ 12022.7, subd. (a)) and personally used a deadly weapon, a knife, in the commission of the offenses (§ 12022, subd. (b)(1)).

---

[1] All further statutory references are to the Penal Code.

2

*Preliminary Hearing*[2]

At a December 2017 preliminary hearing, Sow testified. He narrated surveillance video from the morning of January 1, 2017. According to Sow, the video depicted the street outside of a bar where Sow and Muhammad had a dispute earlier that morning. While Sow spoke with an Uber driver parked on the street, Muhammad asked to speak to him, so Sow walked over to Muhammad. After they briefly spoke, Muhammad went to his car, grabbed a knife, and stabbed Sow. Sow ran, and Muhammad followed, yelling that he was going to kill Sow. After Sow hid behind a car, Muhammad got into his vehicle and drove away.

*Plea Agreement*

In August 2018, pursuant to a plea agreement, Muhammad pled no contest to attempted murder (§§ 187, subd. (a), 664; count 1). The trial court dismissed the two assault counts pursuant to the plea agreement. Muhammad admitted allegations that he personally inflicted great bodily injury on Sow (§ 12022.7, subd. (a)) and that in the commission of the offense he used a deadly weapon, a knife (§ 12022, subd. (b)(1)). His counsel stipulated to a factual basis for the plea based on the arrest reports and the preliminary hearing transcript. The trial court sentenced Muhammad to an aggregate prison term of nine years, pursuant to the plea agreement.

---

[2]    We recount these facts from the preliminary hearing transcript for background purposes and for their relevance in determining the theory of conviction. We do not assume the truth of the evidence admitted at the hearing.

*Petition for Resentencing*

In January 2023, Muhammad filed a petition for resentencing under section 1172.6. The petition alleged Muhammad was entitled to relief because he could not presently be convicted of attempted murder due to changes to sections 188 and 189. The petition further asserted Muhammad was entitled to relief because he did not have the requisite mental state for the conviction, his attempted murder charge was charged generically, and the "target charge was not charged."

The trial court appointed counsel for Muhammad. The People filed an opposition, to which they attached the preliminary hearing and plea transcripts. Muhammad filed a reply.

In September 2023, the trial court denied Muhammad's petition, determining he failed to establish a prima facie case for relief. The court concluded Muhammad had not established eligibility for resentencing because there was no possibility that he was convicted on a theory of liability that was no longer valid. The court cited Muhammad's plea to attempted murder and his admissions to personally causing great bodily injury and using a deadly weapon.

Muhammad timely appealed.

## DISCUSSION

I.    **Senate Bill No. 1437 and Section 1172.6**

In 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who

4

acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see also *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The amendments to the Penal Code did not invalidate murder convictions based on the theory that the defendant was the actual killer. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166, review granted May 1, 2024, S284232 (*Mares*); *People v. Garcia* (2022) 82 Cal.App.5th 956, 967 [Sen. Bill No. 1437 imposed heightened mens rea requirement only for persons who were not actual killers].)

Senate Bill No. 1437 created a procedure, now codified at section 1172.6, to allow persons convicted of qualifying offenses under the former law to seek resentencing if they could no longer be convicted of those offenses under amended sections 188 and 189. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) In addition, as relevant here, Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, extended resentencing eligibility to individuals convicted of attempted murder under the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1, subd. (a).) Thus, under section 1172.6, subdivision (a), "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a

5

person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ."

A defendant's petition must declare that, among other things, the defendant could not presently be convicted of murder or attempted murder under current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.) If the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause. (§ 1172.6, subd. (c).)

## II. Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

"While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Courts may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id*. at p. 972.) Rather, "[t]he record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) The court may make credibility determinations adverse to a petitioner only if the record of conviction " ' "contain[s] facts refuting the

6

allegations made in the petition" . . . .' [Citations.]" (*Lewis*, at p. 971.)

The trial court's denial of a resentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which appellate courts review de novo. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101; *People v. Patton* (2023) 89 Cal.App.5th 649, 656, review granted June 28, 2023, S279670 (*Patton*).)

## III. The Record of Conviction Conclusively Establishes Muhammad Is Ineligible for Relief as a Matter of Law

Muhammad contends the trial court erred in denying his petition at the prima facie stage. We disagree.[3]

As explained above, with respect to attempted murder, section 1172.6 affords relief only to a person convicted under the natural and probable consequences doctrine. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 [§ 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].) The California Supreme Court described that doctrine: " 'Under California law, a person who aids and abets a confederate in the commission of a criminal act is liable not only for that crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted. To convict a defendant of a nontarget crime as an accomplice under the "natural and probable consequences" doctrine, the jury must find that, with knowledge of the perpetrator's unlawful purpose, and with the intent of

---

[3] Several of the issues necessary to the resolution of this appeal are currently pending before the California Supreme Court, as noted below with respect to specific cases.

committing, encouraging, or facilitating the commission of the target crime, the defendant aided, promoted, encouraged, or instigated the commission of the target crime. The jury must also find that the defendant's confederate committed an offense other than the target crime, and that the nontarget offense perpetrated by the confederate was a "natural and probable consequence" of the target crime that the defendant assisted or encouraged.' [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 298–299, quoting *People v. Prettyman* (1996) 14 Cal.4th 248, 254.) As is clear from this description, the natural and probable consequences doctrine applied only to impose liability on an accomplice, on an aiding and abetting theory. (*People v. Fisher* (2023) 95 Cal.App.5th 1022, 1029 [direct perpetrator of crime could not have been convicted under natural and probable consequences doctrine].)

When a conviction is the result of a plea, no findings have been made as to whether any evidence in the record or allegation is true, except for what the defendant has expressly admitted. Nonetheless, a theory of the crime exists at the time of the conviction by plea. The prosecutor need not declare the People's theory in a charging document, at the preliminary hearing, or at the time of the plea. (*People v. Flores* (2022) 76 Cal.App.5th 974, 987, 989–990 (*Flores*).) Yet, we agree with other courts that have concluded that, in some cases, the record of conviction conclusively establishes the People were advancing only one theory of the crime at the time the defendant entered a plea. Whether or not the facts supporting that theory were actually true, that is the theory of the crime and, once the defendant enters a plea, the theory of the conviction. Whether the People could have landed on a different theory had there been no plea

8

and the case had gone to trial is also not the question, since the defendant *did* enter a plea, and the People created a record that made only one theory available at the time of that plea.  If that sole theory is not invalid under current law, the defendant cannot meet the threshold requirement of section 1172.6.  As relevant here, only defendants "*convicted* of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts . . . ."  (§ 1172.6, subd. (a), italics added.)

 Just as a defendant convicted following a jury trial cannot show eligibility for relief under section 1172.6 by asserting there may have been *other* evidence not adduced at trial that would have allowed the jury to make findings inconsistent with current law, a defendant convicted by plea cannot show eligibility for relief by asserting the People could have prosecuted him based on invalid theories when the record conclusively establishes that at the time of the plea, the People were operating under only one theory of the defendant's guilt, and that theory is still valid under current law. [4]  (See, e.g., *People v. Daniel* (2020) 57 Cal.App.5th

---

[4] We therefore disagree with the reasoning of *People v. Williams* (2024) 103 Cal.App.5th 375, 398, review granted September 11, 2024, S286314, which concluded that "the preliminary hearing evidence does not limit the prosecution's trial strategy.  Even where the preliminary hearing evidence suggests the defendant is the actual perpetrator, an information containing a generic charge of murder or attempted murder would still permit the prosecution to proceed at trial under a felony murder, natural and probable consequences, or other

666, 678 [defendant convicted as actual killer argued that he could present evidence at an evidentiary hearing suggesting he was an aider and abettor; court disagreed that § 1172.6 "authorizes a defendant to present new evidence to undermine a jury's finding of guilt under a particular theory of murder, effectively retrying the case"].)

Thus, we agree with the *Mares* court that "a trial court may rely on undisputed facts in the record of conviction showing that the petitioner faced *only* a theory that he was the actual killer." (*Mares*, *supra*, 99 Cal.App.5th at p. 1175, review granted, italics added; see also *People v. Pickett* (2023) 93 Cal.App.5th 982, 990, review granted Oct. 11, 2023, S281643 (*Pickett*) [no evidence of non-viable theory of conviction in support of § 1172.6 resentencing eligibility].) In *Mares*, the defendant pled guilty to

---

imputed malice theory eliminated by Senate Bill No. 1437." In our view, the key question is the prosecution's theory at the time of the plea, not the universe of potential theories the prosecution might have marshaled evidence to support had the case not been resolved by plea. We similarly disagree with the reasoning of *People v. Alazar* (2024) 105 Cal.App.5th 1100, petition for review pending, petition filed November 21, 2024, S287917. We note the approach taken by these courts would afford relief to nearly all defendants who entered a plea of guilty or no contest to murder, attempted murder, or manslaughter, except perhaps for the few defendants who admitted the truth of factual allegations regarding details of the crimes to which they pled. This would be a significant expansion of section 1172.6, running counter to the court's suggestion in *Strong*, *supra*, 13 Cal.5th at page 715, that the statute "notably does not open resentencing to every previously convicted murder defendant . . . ." As in *Strong*, we note that had the Legislature intended to provide resentencing relief to such a broad swath of defendants, "we expect it would have said so more plainly." (*Ibid*.)

voluntary manslaughter while facing a murder charge. The People's theory, as evidenced by testimony at the preliminary hearing and the charges, was that the defendant stabbed the victim and acted alone. The *Mares* court thus explained: "The preliminary hearing transcript shows the basis on which the district attorney pursued the murder charge against Mares. Only an actual killer theory was offered. Our Supreme Court has stated that the transcript of a preliminary hearing, for some purposes, 'reliably reflect[s] the facts of the offense for which the defendant was convicted.' . . . [¶] Here, we need not credit the truth of any fact in the preliminary hearing transcript. What matters is that the record supports no theory other than those where Mares was the actual killer, acting with no accomplice. . . . No facts support a theory that he was an accomplice to a murder committed by some other person. [¶] . . . [¶] Because nothing in the record supports any way Mares could have been guilty of murder on an abrogated theory, rather than as the actual killer, we conclude the record of conviction establishes ' " 'facts refuting the allegations made in the petition,' . . . [justifying] 'the court . . . in making a credibility determination adverse to the petitioner.' " ' [Citation.]" (*Mares*, at pp. 1167–1169.)

Our decision in *Patton*, *supra*, 89 Cal.App.5th 649, review granted, also demonstrates the point. In *Patton*, a panel of this court concluded that a defendant who as part of his plea admitted that he personally used and discharged a firearm in the course of an attempted murder was ineligible for resentencing because the record of conviction, including the preliminary hearing transcript, indicated he was the sole perpetrator. (*Id*. at pp. 656–657.) Patton never asserted any theory to support his contention that he was an accomplice and not the person who shot the victim, nor

11

did he suggest on appeal the existence of any facts that would demonstrate he was not the direct perpetrator. (*Id*. at p. 657.)

We rejected Patton's assertion that the trial court engaged in factfinding, weighed the evidence, or rejected his petition's allegations based on adverse credibility findings from the preliminary hearing transcript. (*Patton*, *supra*, 89 Cal.App.5th at p. 658, review granted.) We reasoned: "The sworn testimony of police officers, based on surveillance video of the crime, that Patton committed the shooting was and is uncontroverted. '[N]o factfinding, weighing of evidence, or credibility determinations' were or are necessary here. '[T]he record of conviction irrefutably establishes as a matter of law that' Patton was convicted as the actual perpetrator of the attempted murder." (*Ibid*.)

Similarly, here, the undisputed facts in the record of conviction establish that Muhammad was convicted on the theory that he was the direct and sole perpetrator of the attempted murder. The charging document charged Muhammad alone, and he was the only defendant entering a plea as reflected in the plea transcript. Neither suggested there were other participants in the crime. The preliminary hearing transcript supported only a theory that Muhammad acted alone and as the direct perpetrator. In the uncontroverted record of conviction, there is no suggestion of an accomplice or confederate as would be necessary for a natural and probable consequences theory. (Cf. *Mares, supra,* 99 Cal.App.5th at pp. 1161, 1167, review granted [preliminary hearing transcript established petitioner admitted to stabbing victim and acting alone]; *Pickett*, *supra*, 93 Cal.App.5th at pp. 986, 990, review granted [preliminary hearing transcript showed petitioner was the sole person to approach the victim with a gun and fire shots]; *Patton*, *supra*, 89 Cal.App.5th

12

at pp. 652–653, 657, review granted [surveillance video played at preliminary hearing showed petitioner acted "[a]s the sole and actual perpetrator" in shooting victim].)

While not dispositive, the allegations Muhammad admitted as part of his plea further establish the theory of conviction was that Muhammad was the sole, direct perpetrator. Muhammad admitted he personally inflicted great bodily injury on the victim, within the meaning of section 12022.7, subdivision (a). "The natural meaning of 'personally inflicted' is that the defendant [him]self inflicted the injury." (*People v. Harden* (2022) 81 Cal.App.5th 45, 55, citing *People v. Cole* (1982) 31 Cal.3d 568, 578–579 [under § 12022.7, "personally inflict[s]" means those who "directly perform" the act causing physical injury].) In enacting section 12022.7, "the Legislature intended to impose an additional penalty for causing great bodily injury only on those principals who perform the act that directly inflicts the injury, and that one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7." (*Cole*, at p. 571.) "Accordingly, 'one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7.' [Citation.]" (*People v. Slough* (2017) 11 Cal.App.5th 419, 423.) Likewise, Muhammad also admitted he personally used a deadly weapon, a knife, in the commission of the crime, within the meaning of section 12022, subdivision (b)(1)). (See *Patton*, *supra*, 89 Cal.App.5th at pp. 652, 656, review granted [defendant ineligible for resentencing where he admitted to personal use of firearm in commission of the crime and theory was he was "sole perpetrator of the attempted murder"].)

As articulated in *Mares*, if "the record contains any

indication [a defendant] had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition. The record here, however, refutes the conclusory assertion that [the defendant] cannot be convicted today 'because of' Senate Bill 1437." (*Mares*, *supra*, 99 Cal.App.5th at p. 1173, review granted.) As in *Mares*, here, "[n]o record evidence shows [the defendant] was an accomplice," and uncontradicted record evidence shows Muhammad was convicted as the killer. (*Ibid.*)

In reaching our conclusion, we do not weigh any evidence or engage in factfinding.[5] Indeed, there are no alleged facts or argued theories that controvert the preliminary hearing transcript. "We can thus assess [Muhammad's] prima facie showing without 'engag[ing] in "factfinding involving the weighing of evidence" ' . . . because [Muhammad] offer[s] no evidence to weigh . . . ." (*Pickett*, *supra*, 93 Cal.App.5th at p. 990, review granted.) We conclude only that the record of conviction establishes that the sole murder theory at the time of Muhammad's conviction was that he "acted alone in stabbing the victim." (*Mares*, *supra*, 99 Cal.App.5th at p. 1161, review granted.) Therefore, we "simply recognize the absence of any theory, incompatible with the record, that the defendant was guilty of aiding and abetting an unidentified" confederate. (*Id.* at p. 1169.)

We disagree with Muhammad that *People v. Estrada* (2024) 101 Cal.App.5th 328 (*Estrada*), is persuasive here as it addressed

---

[5] Muhammad argues that his stipulation to the preliminary hearing transcript as the factual basis for the plea does not constitute a binding admission of the facts therein. We do not conclude otherwise. (*Flores*, *supra*, 76 Cal.App.5th at p. 991.)

14

a materially different record of conviction.  In *Estrada*, also a case involving stabbing, Division Eight of this appellate district rejected the Attorney General's argument that Estrada was the sole perpetrator and therefore malice could not have been imputed to him.  The court also concluded Estrada's admissions of personal use of a deadly weapon and infliction of great bodily injury did not establish that he acted with the intent to kill or refute that he was convicted on a theory of imputed malice since the allegations required "only a general intent to use a deadly weapon or inflict bodily injury." (*Id*. at p. 338.)

However, the charging document in *Estrada* indicated the People charged Estrada with murder and attempted murder, while charging a codefendant with assault with force likely to cause great bodily injury.  Evidence at the preliminary hearing suggested the potential involvement of not only the codefendant, but also two other individuals who were seen immediately after the crimes with blood on their shirts and shoes; one of the two individuals had a box cutter; a witness said the two individuals were involved in the crime; and a third unidentified person was seen on surveillance video. (*Estrada*, *supra*, 101 Cal.App.5th at pp. 332–333.)

Under these circumstances, the record of conviction suggested the prosecution had more than one possible theory available to it to argue Estrada was guilty of murder and attempted murder.  The facts for those potential theories were included in the record of conviction.  And, since the record did not indicate what, if any, theory the People may have had as to the two uncharged potential participants in the crime, the record of conviction could not conclusively establish that the theory of murder or attempted murder as to Estrada was not natural and

15

probable consequences or another invalid theory. On these facts, *Estrada* differed from other section 1172.6 plea cases, including *Patton* and *Mares*. (*Estrada*, *supra*, 101 Cal.App.5th at p. 340.)

In contrast, here, there is no need to speculate or engage in factfinding to determine that at the time of the conviction, the People were pursuing only one theory: Muhammad, acting alone, stabbed the victim in an attempt to kill him. Whether the underlying alleged facts were true or not, the charges, evidence offered at the preliminary hearing, and the structure of the plea agreement did not allow for any other theories. A natural and probable consequences theory would have required the People to suggest or theorize that someone else was involved in the attempted murder. While in *Estrada* the preliminary hearing evidence would have permitted the People to make that claim, there was no such evidence here. The record of conviction conclusively establishes that Muhammad was convicted on the theory that he was the actual perpetrator of the attempted murder. He is therefore ineligible for resentencing as a matter of law. (*Mares*, *supra*, 99 Cal.App.5th at p. 1176, review granted [record is uncontested that Mares was the actual killer, and Mares did not offer a theory under which the evidence pointed to his guilt on an abrogated theory].)

## IV. Muhammad Has Not Established a Violation of His Due Process Rights

Muhammad also cursorily asserts that the trial court's denial of his petition without issuing an order to show cause and allowing him to be present at an evidentiary hearing violated his state and federal procedural due process rights. We reject this argument.

Muhammad's procedural due process argument appears to be premised solely on the trial court's denial of an evidentiary hearing. A petitioner is entitled to an evidentiary hearing only if undisputed facts contained in the record of conviction do not demonstrate the petitioner's ineligibility for relief as a matter of law. (§ 1172.6, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 971–972.) As explained, we find no error in the trial court's conclusion that Muhammad failed to make the requisite prima facie showing of eligibility for resentencing. We consequently reject Muhammad's procedural due process argument.

**DISPOSITION**

We affirm the order denying the petition for resentencing.

**CERTIFIED FOR PUBLICATION**


ADAMS, J.


We concur:


EDMON, P. J.


EGERTON, J.